UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMIE DARYN STITT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:12-CV-2346-RWS-NAB |
| MICHAEL J. ASTRUE[1], | ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Jamie Daryn Stitt's ("Stitt") application for benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 42 U.S.C. §§ 1381 *et seq.* Stitt alleged disability due to "acute chronic" pancreatitis, depression, and diabetes. (Tr. 316.) This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) for a report and recommendation. [Doc. 6.]

**I.    Background**

On November 24, 2009 and December 1, 2009, Stitt applied for disability insurance benefits and supplemental security income benefits ("SSI"). (Tr. 122-123A, 125-131.) The Social Security Administration ("SSA") denied Stitt's claim and he filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 80-80A, 85-88.) The SSA granted Stitt's request for review. (Tr. 54-59.) Two administrative hearings were held on January 11, 2011 and August 9, 2011. (Tr. 1168-1206.) The ALJ issued a written opinion upholding the

---

[1] At the time this case was filed, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Carolyn W. Colvin for Michael J. Astrue in this matter.

denial of benefits. (Tr. 10-16.) Stitt requested review of the ALJ's decision from the Appeals Council. (Tr. 17.) On November 9, 2012, the Appeals Council denied Stitt's request for review. (Tr. 3-6.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel,* 530 U.S. 103, 107 (2000). Stitt filed this appeal on December 19, 2012. [Doc. 1.] The Commissioner filed an Answer and the certified Administrative Transcript on March 6, 2013. [Docs. 11, 12.] Stitt filed a Brief in Support of Complaint on June 7, 2013. [Doc. 15.] The Commissioner filed a Brief in Support of the Answer. [Doc. 22.]

**II.     Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A), 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(iii).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional

capacity to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). Therefore, even if this Court finds that there is a preponderance of evidence against the weight of the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir. 1984). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Gwathney v. Chater,* 1043, 1045 (8th Cir. 1997).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;

>    (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
>    (7) The testimony of consulting physicians

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

### III. ALJ's Decision

The ALJ determined that Stitt met the insured status requirements of the Social Security Act from the alleged onset date of disability through the date of the decision. (Tr. 12.) The ALJ found that Stitt engaged in substantial gainful activity from October 15, 2008 through December 31, 2009 and Stitt has not engaged in substantial gainful activity since January 1, 2010. (Tr. 12-13.) Next, the ALJ determined that Stitt had the severe impairments of alcoholism and recurrent bouts of acute pancreatitis due to alcohol consumption, however, he did not have an impairment or combination of impairments that met or medically equaled a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14.) Then, the ALJ found that Stitt could perform work at all exertional levels, but he requires frequent absences that would preclude all work and require a finding of disability. (Tr. 14-16.) The ALJ determined that Stitt would not have a severe impairment if he abstained from the use of alcohol and alcoholism has been a contributing factor material to Stitt's disability. (Tr. 16.) Thus, the ALJ concluded that Stitt is not disabled within the meaning of the Social Security Act. (Tr. 16.)

Stitt asserts that the ALJ erred in failing to give controlling weight to his treating psychiatrist; finding that Stitt had mild functional limitations, and finding that he would not have a severe impairment if he abstained from alcohol. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole.

**IV.** **Administrative Record**

The following is a summary of relevant evidence before the ALJ.

**A.** **Administrative Hearings**

At the administrative hearings, the ALJ heard testimony from Stitt and vocational expert ("VE") Delores Gonzalez. Stitt was represented by his ex-wife at the first administrative hearing and legal counsel at the second administrative hearing.

**1.** **Stitt's Testimony**

Stitt testified that he was fifty years old at the time of the first administrative hearing. (Tr. 1195.) Stitt stated he was a high school graduate and had previously worked as a telecommunications installer and supervisor, welder, and business owner. (Tr. 1196-1197.) Stitt had not worked since his company closed in 2009. (Tr. 1197.) Stitt collected unemployment and represented that he was ready, willing, and able to work. (Tr. 1197-1198.) Stitt stated he lived with his ex-wife. (Tr. 1173, 1199.)

Stitt testified that he has had problems with alcohol, but he has never lost a job due to his drinking. (Tr. 1198.) He received a driving under the influence ("DUI") charge two years before the first administrative hearing. (Tr. 1198.) Stitt was still drinking alcohol at the time of the second administrative hearing. (Tr. 1176.) Stitt has been hospitalized for pancreatitis, psychiatric problems, and alcohol abuse. (Tr. 1173-1177, 1199-1200.) Stitt's doctors have recommended that he stop drinking completely, but he has been unable to do so. (Tr. 1200.) Stitt also testified that he has uncontrolled diabetes and takes insulin. (Tr. 1179, 1203.) Stitt received psychiatric care from Dr. Rao and other members of his practice group. (Tr. 1180-1181, 1200-1201.)

### 2. VE's Testimony

VE Gonzalez testified that a hypothetical individual with Stitt's age, education, and work experience who can perform a full range of medium work, with the ability to understand, remember, and carry out at least simple instructions and non-detailed tasks, and cannot work in a setting that includes constant and regular contact with the general public would be able to perform work as an industrial cleaner and a turner. (Tr. 1185.) VE Gonzalez also testified that the same hypothetical individual in the first example who could complete light work rather than medium work would be able to work as a housekeeping cleaner and mail clerk. (Tr. 1185-1186.) She also stated that assuming the hypothetical individual's "mental problems" would interfere with the ability to attend to work twenty percent of the time during the day, work week, or work month, the hypothetical individual would be unable to maintain competitive employment. (Tr. 1189.)

### B. Medical Records[2]

#### 1. Emergency Room Visits

The administrative record reflects that Stitt visited the emergency room at least ten times between December 9, 2008 and March 17, 2011 that did not result in a hospitalization. (Tr. 476-498, 590-599, 683-698, 847-879, 914-922, 1001-1011, 1014-1024.) The emergency room diagnoses at discharge included chronic pancreatitis, alcohol induced pancreatitis, acute alcohol intoxication, chronic alcoholism, diabetes mellitus, hypertension, Barrett's esophagus, and depression with anxiety. (Tr. 476-498, 590-599, 683-698, 847-879, 914-922, 1001-1011, 1014-1024.)

---

[2] The undersigned notes that some medical records in the administrative record are incomplete due to undated and/or missing pages. The references to the medical records are the best attempt to summarize them in a concise and accurate manner.

### 2. Hospitalizations

Stitt was admitted to the hospital at least fourteen times between December 2008 and February 2012. (Tr. 499-586, 600-649, 654-682, 699-750, 755-776, 797-844, 884-885, 912-913, 924-960, 979-1000, 1083.) His gallbladder was removed during one hospitalization at Freeman Health System. (Tr. 797-844.) During the other hospitalizations, he was treated primarily for alcoholism, alcoholic intoxication and withdrawal, chronic pancreatitis, alcoholic pancreatitis, hypertension, depression, and diabetes mellitus. (Tr. 499-586, 600-649, 654-682, 699-750, 755-776, 884-885, 912-913, 924-960, 979-1000.)

During his February 2011 hospitalization at St. John's Mercy Medical Center, Stitt reported that he was suicidal and had been drinking a bottle of Captain Morgan every day for the previous two months. (Tr. 924.) Stitt also reported that he had not had a period of sobriety in years. (Tr. 924.) The hospital placed Stitt on an alcohol detoxification protocol during that stay and was diagnosed with alcohol dependence and depression not otherwise specified upon discharge. (Tr. 928.) In June 2011, Stitt was hospitalized for alcoholism, increased depression, and suicidal thoughts. (Tr. 1083, 1090-1091.) At the time of his hospitalization, the provider noted that he was positive for depression and substance abuse. (Tr. 290.) At the end of his hospital stay, Stitt denied strong depressive symptoms with suicidal thoughts or psychotic features and showed a significantly improved mood and affect. (Tr. 1083.)

Stitt was hospitalized again in July 2011 for ten days. (Tr. 1072.) The discharge summary notes that Stitt showed a good response with stabilization of symptoms and that at the end of his stay, he denied strong depressive symptoms with suicidal thoughts or psychotic features, and significantly improved in mood and affect. (Tr. 1072.)

### 3. Psychiatric Care with Dr. Rao

Stitt began treatment with Dr. Shankar R. Rao in January 2009. (Tr. 1041-1043.) At the initial consultation, Stitt reported to Dr. Rao that he had been treated for bi-polar illness and suffered from alcoholism in the past. (Tr. 714.) During the mental status examination, Dr. Rao noted Stitt was disheveled, hyperactive, agitated with a cooperative attitude, labile and flat affect, depressed and euphoric mood, and with delayed, loud, excessive, pressured, and perservating speech. (Tr. 1042.) Dr. Rao opined that Stitt's thought process was intact, no suicidal or homicidal ideations were present, and he was oriented to self, time, place, and person. (Tr. 1043.) Stitt had impaired judgment and average level of intellectual functioning. (Tr. 1043.) Dr. Rao diagnosed him with bi-polar I disorder most recent episode mixed, severe with psychotic features and generalized anxiety disorder. (Tr. 1043.)

Dr. Rao's treatment notes between February 2009 and February 2011 indicate that Stitt reported mood swings and feeling anxious and depressed. (Tr. 1044-1047.) Stitt also reported that he was stressed and had problems sleeping. (Tr. 1044-1047.) According to Dr. Rao's notes, Stitt admitted to alcohol use during 3 out of 10 visits- in August 2009 and 2010 and February 2011. Stitt did not receive any treatment from Dr. Rao between February and August 2010 and between August 2010 and February 2011.

On February 4, 2011, Dr. Rao completed a Medical Statement and Psychiatric Review Technique regarding Stitt. (Tr. 893-910.) In the Medical Statement, Dr. Rao opined that Stitt suffered from bi-polar I disorder most recent episode mixed, severe with psychotic features and generalized anxiety disorder. (Tr. 893.) Dr. Rao noted that Stitt suffered from a large variety of symptoms, including panic attacks and obsessive compulsive symptoms. (Tr. 893-894.) The Medical Statement states that to the extent possible, the author was not to consider limitations

imposed by any co-existing substance abuse and was to only consider psychiatric illnesses apart from any substance abuse. (Tr. 893.) Dr. Rao found Stitt extremely impaired (most severe rating) in seventeen out of twenty categories of work related functions. (Tr. 894-896.) He determined that Still was moderately impaired in the ability to carry out very short and simple instructions and the ability to ask simple questions or request assistance. Dr. Rao also found that he was markedly impaired in the ability to remember locations and work-like procedures. (Tr. 894-895.) Dr. Rao opined that Stitt had poor judgment and poor insight into his mental condition and depended on his ex-wife for support. (Tr. 896.) Dr. Rao also stated that Stitt was totally disabled and unable to hold any job. (Tr. 896.)

## V. Discussion

Stitt presents three errors for review. First, Stitt asserts that the ALJ erred by not giving controlling weight to the opinions of his treating psychiatrist, Dr. Rao. Second, Stitt asserts that the ALJ's finding of only mild limitations in activities of daily living is not supported by the record. Third, Stitt asserts that the ALJ erred in finding that he would not have a severe impairment if he abstained from alcohol. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole.

### A. Treating Physician Opinion and Functional Limitations

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the

9

case record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p; *see also Hacker*, 459 F.3d at 937.  "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation."  *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).  "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians."  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).  "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if [the conclusions] are inconsistent with the record as a whole."  *Id.*

In this case, the ALJ stated that Dr. Rao's opinion was given "virtually no weight," because his opinions were grossly inconsistent with his treatment notes and other medical evidence in the record. (Tr. 14.)  Stitt asserts that the ALJ failed to set out and establish the gross inconsistencies, and therefore the decision should be reversed.  Stitt also asserts that the ALJ substituted his opinion for Dr. Rao's opinion in finding that Stitt only had mild functional limitations and that the ALJ's finding was contradicted by other medical evidence in the record. Based on the evidence in the record as a whole, Dr. Rao's opinion that Stitt had extreme limitations in activities of daily living, maintaining social functioning, concentration, persistence, and pace, with episodes of decompensation is not supported by the record.  Dr. Rao's treatment notes do not indicate such a severe level of disability.  The remainder of the medical records conclusively shows that Stitt's medical treatment for various ailments were caused or exacerbated by alcohol abuse.  Dr. Rao's treatment notes mention Stitt's alcohol abuse in passing and consist mainly of complaints made by Stitt regarding lack of sleep, numerous personal problems, and being anxious or depressed.  Further, the other medical evidence in the record consists almost entirely of treatment for pancreatitis induced by alcoholism or for alcohol

detoxification. The undersigned finds that the ALJ's assignment of "virtually no weight" to Dr. Rao's February 4, 2011 evaluation is supported by substantial evidence in the record as a whole.

  **B.**  **Alcohol and Drug Abuse Analysis**

Next, Stitt asserts that the ALJ erred in finding that he would not have a severe impairment if he abstained from alcohol. The Social Security Act states that if alcohol or drug abuse is a contributing factor material to the determination of disability, the application must be denied. 42 U.S.C. § 423(d)(2)(C). The burden of proving that substance abuse is not a contributing factor material to the disability determination falls on the claimant. *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000). "The plain text of the relevant regulation requires the ALJ to first determine whether [the claimant] is disabled." *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003); 20 C.F.R. §§ 404.1535(a), 416.925(a). "The ALJ must reach this determination initially, … using the five-step approach without segregating out any effects that might be due to substance use disorders." *Brueggemann*, 348 F.3d at 694. "The ALJ must base this disability determination on substantial evidence of [the claimant's] medical limitations without deductions for the assumed effects of substance use disorders. *Id.* "The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established." *Id.* Substance use disorders are simply not among the evidentiary factors [precedents] and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability." *Id.* "If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent." *Id.* at 694-95.

Only after the ALJ has made an initial determination that a claimant is disabled, that drug or alcohol use is a concern, and that substantial evidence on the record shows what limitations would remain in the absence of alcohol or drug addiction, may he then reach a conclusion on whether the claimant's substance use disorders are a contributing factor material to the determination of disability. *Brueggemann*, 348 F.3d at 695. "If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise acknowledged disability, the claimant's burden has been met and an award of benefits must follow." *Id.* at 693. "When an applicant is actively abusing drugs, this inquiry is necessarily hypothetical, and thus more difficult than if the claimant had stopped." *Kluesner v. Astrue*, 607 F.3d 533, 538 (8th Cir. 2010). "Even though the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other." *Brueggermann*, 348 F.3d at 695.

In this case, substantial evidence supports the ALJ's determination that Stitt would not have a severe impairment if he abstained from the use of alcohol. As described above, the overwhelming medical evidence shows that Stitt's severe impairment of recurrent acute pancreatitis is caused by his alcoholism. Almost all of Stitt's medical treatment since the alleged onset date of disability, with few exceptions, concerns treatment for alcohol induced pancreatitis and alcohol detoxification. Stitt has not met his burden to show substance abuse is not a contributing factor material to the disability determination.

**C.    Motion for Appointment of Counsel**

Stitt filed a motion for appointment of counsel. [Doc. 3.] "There is no constitutional right or statutory right to appointed counsel in civil cases." *Phillips v. Jasper County Jail*, 437 F.3d 791, 794 (8th Cir. 2006). "The relevant criteria for determining whether counsel should be

appointed include the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *African Int'l. Store v. U.S. Dep't of Agriculture,* 4:12-CV-2326 HEA at *1, 2014 WL 321292 (E.D. Mo. Jan. 29, 2014) (citing *Edgington v. Missouri Dep't of Corr.,* 52 F.3d 777, 780 (8th Cir.1995), *abrogated on other grounds, Doe v. Cassel,* 403 F.3d 986, 989 (8th Cir.2005)). "In considering a motion to appoint counsel for an indigent plaintiff, the court should determine whether the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Id.* In this case, Stitt was determined to be indigent by the Court. [Doc. 5.] Upon review of the circumstances of this case, the undersigned finds that the appointment of counsel is not necessary for this case. This case is an appeal of an administrative decision, which based on the administrative record was not factually complex. Further, Stitt did a very good job of presenting his claims and legal arguments to the court. Therefore, the undersigned will deny Stitt's motion for appointment of counsel.

## VI. Conclusion

For reasons set forth above, the undersigned recommends that the Commissioner's decision be affirmed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief which Stitt seeks in his Complaint and Brief in Support of Complaint be **DENIED**. [Docs. 1, 15.]

**IT IS FURTHER ORDERED** that Stitt's Motion for Appointment of Counsel is **DENIED**. [Doc. 3.]

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 3rd day of February, 2014.

                                                /s/ Nannette A. Baker       .
                                                NANNETTE A. BAKER
                                                UNITED STATES MAGISTRATE JUDGE